### Galveston, Brazos & Southwestern Railway Company v. Frank Fontaine.

Decided May 12, 1900.

**Railroad Mortgage to Secure Statutory Lien—Resolution of Board of Directors and Registry Not Necessary.**

Articles 4487 and 4402 of the Revised Statutes, providing that no mortgage by a railway corporation shall be valid unless authorized by a resolution adopted by a vote of two-thirds of all the stock of such corporation after sixty days notice to the stockholders, and articles 4584h and 4584i, providing that bonds and other evidences of debt issued by railway corporations shall not be valid unless approved by the State Railway Commission, and registered by the Secretary of State, have no application to a mortgage executed by a railway company to secure a statutory lien which has already attached to its road bed and property for work done and materials furnished in the construction thereof, and by the execution of which mortgage the company merely secures an extension of time on the debt.

Appeal from Galveston. Tried below before Hon. E. D. Cavin.

*James B. & Chas. J. Stubbs,* for appellant.

*John W. Campbell,* for appellee.

PLEASANTS, Associate Justice.—The appellee, Frank Fontaine, brought this suit against appellant to recover upon an alleged indebtedness of $385.17, due for labor performed with tools and teams in the construction of appellant company's roadbed, and to foreclose a mortgage given by appellant to secure the payment of said indebtedness. I. Hauser intervened in the suit, claiming an indebtedness against appellant of $239.82, for which he prayed judgment with foreclosure of the statutory

lien upon appellant's roadbed. The court below gave judgment in favor of Fontaine for the amount of his claim, with foreclosure of the mortgage lien, and in favor of appellant on the claim of the intervener. To this judgment defendant and intervener both excepted and gave notice of appeal, but intervener failed to perfect his appeal.

Appellant's first and second assignments of error challenge the action of the trial court in admitting in evidence, over the objections of appellant, the mortgage offered by appellee, "because said mortgage had not been authorized by resolution adopted by two-thirds of all the stock of said company after notice in the manner provided by law, and was not authorized by any resolution, and did not purport to be the act of the defendant railroad corporation; and further, because the defendant was not capable of executing a mortgage or conveyance of a lien to plaintiff without such resolution, and because there was no pleading upon which to base the introduction in evidence of the instrument as a valid mortgage lien, or as the authorized act of the defendant railroad company; * * * and because it does not appear from the evidence that such mortgage was issued by or under authority of the railway company as required by law, and was not registered under the direction of the Railroad Commissioner of Texas, and presented to the Secretary of State as required by law, and was for this reason also void and not properly the basis of any judgment."

The mortgage is as follows:

"State of Texas, County of Galveston.—Whereas, Frank Fontaine, of said State and county, has heretofore performed labor and worked with tools, teams, and otherwise in the construction of the roadbed of the Galveston, Brazos & Southwestern Railway Company; and whereas, wages are due and owing to the said Frank Fontaine for such work by him performed, and for the work of tools and teams employed as aforesaid, and for work otherwise performed at the instance of said railway company, and at the instance of L. P. Featherstone & Co., contractors and agents of said railway company; and whereas the amount due the said Frank Fontaine by the said railway company is evidenced by three time checks, one dated March 21, 1898, for $345.43, on which time check there are two credits, one for $100 paid on April 6, 1898, and the other credit for $15, paid on May 2, 1898; the second of said time checks being dated June 25, 1898, for $79.74, and the third of said time checks for $75; and whereas, the amount of such indebtedness from the said railway company to the said Frank Fontaine is in every respect just and due and unpaid; and whereas, the said Frank Fontaine has a valid and subsisting lien on the entire roadbed and other equipments of said railway company for the amount due him as aforesaid for said personal services, and for the use of tools and teams; and whereas, it would be prejudicial to the said railway company for the said Frank Fontaine to bring suit against it to recover the amount due him as aforesaid, and to have said roadbed and its equipment sold to satisfy the same; and

whereas, the said Frank Fontaine has placed said three time checks and his said claim against the said railway company in the hands of his attorneys for the purpose of bringing suit thereon in order to recover judgment thereon and to have his said lien adjudged in his favor, but has agreed, in consideration of the execution of this instrument by the said railway company, to refrain until May 1, 1899, from bringing suit: Now, therefore, in consideration of the premises, the said Galveston, Brazos & Southwestern Railway Company does hereby acknowledge and admit that it is justly indebted unto the said Frank Fontaine in the amounts aforesaid, and that such indebtedness was incurred in the manner aforesaid, and that the said Frank Fontaine has a valid and subsisting lien on the roadbed and other equipment of the said railway company as provided by statute; and said railway company hereby promises and agrees to pay to the said Frank Fontaine, or his order, at Galveston, Texas, the amount of said indebtedness, with legal interest thereon, on or before May 1, 1899. It is further acknowledged and agreed that the lien of the said Frank Fontaine on the roadbed and other equipment of the said railway company is now and shall remain in full force and effect until the payment by the said railway company in full of said indebtedness.

"The said railway company further agrees that the said Frank Fontaine hath a valid and subsisting lien upon the said roadbed and other equipment of said railway company, by virtue of this agreement as well as under the statute of the State of Texas, to secure the payment of said indebtedness, and that each of said liens shall remain in full force and effect until the payment of said indebtedness.

"In testimony whereof, the said Galveston, Brazos & Southwestern Railway Company has caused these presents to be executed by its president and attested by its corporate seal at Galveston, Texas, this 20th day of March, A. D. 1899.

> "The Galveston, Brazos & Southwestern Railway Co.
> "By L. P. Featherstone, President.
"Attest: Geo. W. Seibert, Secretary."   [Seal.]

This instrument was duly acknowledged by Featherstone and Seibert, and was recorded in the mortgage records of Galveston County.

Article 4486, Revised Statutes, authorizes any railway corporation to borrow from time to time such sum or sums as may be necessary for constructing, completing, improving, or operating its railway, and to issue and dispose of its bonds for any amount so borrowed, and to mortgage its corporate property and franchise to secure the payment of any debt contracted by such corporation for the purposes aforesaid. Article 4487 provides, that "No mortgage by such corporation shall be valid unless authorized by a resolution adopted by a vote of two-thirds of all the stock of such company after notice in a manner provided in this title for increasing the capital stock of such corporations." Article 4402 requires that notice of a meeting to increase the capital stock shall be

served personally on each stockholder, "or by depositing same in a post-office directed to the postoffice addresses of each of said stockholders severally, postage prepaid, at least sixty days prior to the day appointed for such meeting, and also by advertising the time, place, and purpose of such meeting in some newspaper published in each county through or in which the said road shall run or be intended to run (if any newspaper shall be published therein), at least sixty days next preceding the day appointed for such meeting." Article 4584h provides that all bonds issued by railway corporations shall be presented to the Railway Commission for approval, and if approved by said Commission shall, as directed in article 4584i, be presented to the Secretary of State and by him registered; and said last mentioned article provides, that "No bond or other evidence of debt hereafter issued by or under authority of any person, firm, corporation, court, or railway company, whereby a lien is created on its franchises or property situated in this State, shall be valid or have any force until the same has been registered as required herein."

The evident object of these provisions of the statute is to restrict the power of railway corporations of incurring liabilities which become a lien upon the franchise and property of such corporations, and thereby necessitates an increase in freight rates, and a corresponding additional burden upon the industry and commerce of the State, and such legislation is, in our opinion, most wise and salutary. We do not think, however, these provisions of the statute have any application to the mortgage in question in this case, because such mortgage created no new lien and only extends the life of a lien already in existence, and comes neither within the letter or spirit of the statutes.

The trial court finds in its conclusions of fact that the recitals in said mortgage are true, and such being the case, at the time the mortgage in question was executed appellant was justly indebted to the appellee in the sum named in said mortgage, said indebtedness having been legally incurred, and under the statute of this State, article 3312, appellee had a valid and subsisting lien upon appellant's railroad and its equipments to secure the payment of such indebtedness, which he was about to enforce. Under these circumstances, appellant did not incur any additional liability, nor incumber its property with any additional lien by the execution of the mortgage, and it certainly is not reasonable to construe the statutes above quoted so as to deny appellant the right to obtain an extension of its indebtedness, when such extension was for its own benefit and protection and enabled it to retain possession of its railroad and equipments. Our Constitution and laws declare that a lien upon the homestead of a husband and wife shall never be valid except when given to secure the purchase money, or for permanent improvements placed upon the homestead under a contract executed by the husband and wife in the manner prescribed by law, yet it is well settled that when it is necessary to protect the homestead from forced sale under a valid and subsisting lien, a mortgage given by the husband for that purpose is

valid. Gilliem v. Collier, 53 Texas, 592; McCarty v. Brackenridge, 1 Texas Civ. App., 180; Baker v. Collins, 4 Texas Civ. App., 524.

We think the principle upon which such mortgages upon the homestead are held valid may be applied to the mortgage in this case, and without considering the question as to whether or not it devolved upon appellant to plead that the necessary prerequisites to make the mortgage valid had not been performed, nor as to whether appellant is estopped from denying the validity of the mortgage, we are of opinion that the trial court did not err in admitting the mortgage in evidence and rendering judgment foreclosing same.

Appellant's third assignment of error is without merit. The application for a continuance shows no diligence to procure the testimony of the absent witness, and was properly overruled. If the witness had been present on the trial of the case, it is not at all clear that, under the pleadings in the case and in view of the recitals in the mortgage, the proposed testimony would have been admissible.

We find no error in the judgment of the court below, and it is in all things affirmed.

*Affirmed.*